CINDERELLA HARPER et al., Plaintiff in Error, v. STANDARD OIL COMPANY, Defendant in Error.

### St. Louis Court of Appeals, January 24, 1899.

Damages: NEGLIGENCE: LIABILITY. In the case at bar there is no evidence showing that in constructing the tanks complained of defendant did anything calculated to excite just apprehension of fire in the minds of persons of normal nervous sensibility. The mere fact that the rental value of the plaintiff's property was injured does not render defendant liable, in the absence of any showing of negligence. Held, that the trial court correctly sustained the demurrer to the evidence.

*Appeal from the Ralls Circuit Court.*—HON. REUBEN F. ROY, Judge.

AFFIRMED.

J. J. HENDERSON and R. E. ANDERSON for plaintiffs in error.

A private nuisance is defined to be anything done to the hurt or annoyance of the lands, tenements or hereditaments of another. 3 Bl. Com. 216. Any unwarrantable, unreasonable or unlawful use by a person of his own property, real or personal, to the injury of another, comes within the definition stated and renders the owner or possessor liable for all damages arising from such use. Woods'. Law of Nuisance S. 1, and authorities cited. The rule is of universal application, that while a man may prosecute such business as he chooses on his own premises, he has no right to erect and maintain a nuisance to the injury of an adjoining proprietor or of his neighbor, even in the pursuit of a lawful trade. Brady v. Weeks, 3 Barb. 159; Wiers Appeal, 74 Pa. St. 230. We do not contend that the erection and maintenance of ———— gasoline and kerosene tanks and the building for barreling the same, on defendant's premises, necessarily constituted a nuisance *per se.* That depends on the locality, the quantity, and the surrounding circumstances. In this case it should have been left for the jury to determine whether from the dangerous character of defendant's business, the proximity to plaintiff's buildings and all the facts proved upon the trial, defendant was chargeable with maintaining a private nuisance, and answerable for damages arising from the depreciation of the market and rental value of plaintiff's property. Heeg v. Licht, 80 N. Y. 579. The court erred in refusing to find and so instruct the jury that the defendant's gasoline and oil works was dangerous in itself to plaintiff's and their property, and was a private

nuisance, and that defendant was liable to the plaintiffs whether it was carelessly kept or not. Aldreds case, 9 Coke, 58; Hay v. Cohoes Co., 2 N. Y. 159; Pixley v. Clark, 35 N. Y. 523. No principle is better settled than that where a trade or business is carried on in such a manner as to interfere with a reasonable and comfortable enjoyment by another, of his property, or which occasions material injury to the property itself, a wrong is done to neighboring owner for which an action will lie. And this, too, is without regard to the locality where such business is carried on; and this, too, although the business may be a lawful business and one useful to the public; and although the best and most approved appliances and methods may be used in the conduct and management of the business. Susquehanna Fertilizer Co. v. Malone, 73 Md. 276. * * *

GEO. A. MAHAN, F. L. SCHOFIELD and A. D. EDDY for defendant in error.

The motion to set aside the judgment entered on plaintiff's nonsuit is not preserved in the bill of exceptions. There is, therefore, nothing for this court to review. R. S. 1889, sec. 2304. This case has been finally adjudicated. Harper v. Die Co., 74 Mo. App. 644. "It shall not be necessary for the review of the action of any lower court on appeal or writ of error, that the motion for new trial in arrest of judgment or instructions filed in the lower court shall be copied or set forth in the bill of exceptions filed in the lower court: Provided, the bill of exceptions so filed contains a direction to the clerk to copy the same, and the same are so copied into the record sent up to the appellate court." "When any bill of exceptions shall have been allowed and signed, the clerk of the court shall, within the same period, cause the same to be written out at full length, unless previously done, and attach such bill of exceptions to the roll as part thereof." Sec. 3235. "It is true that motions for new trial and in

arrest have been copied into the transcript by the clerk, but such motions form no part of the record, unless so made by being incorporated in the bill of exceptions." Sherwood, J., in Blount v. Zuik, 55 Mo. 455; State v. Sheham, 25 Mo. 565. That motions made in any case can not be noticed by appellate courts, unless they are set out in the bill of exceptions, has been so frequently and uniformly decided in this State that the point must be considered definitely settled. Rombauer, J., in Kohn v. Lucas, 17 Mo. App. 29; Banks v. Finks, 40 Mo. App. 367. It is a well settled rule of procedure that no motion can form a part of the record unless embodied in the bill of exceptions. The clerk in this case has copied the motion for new trial and in arrest, as part of the record proper. This action by the court could not possibly make the motion a part of the record. This could only be accomplished by having them embodied in the bill of exceptions, and this signed by the judge." Biggs, J., in Puller v. Thomas, 36 Mo. 105-107; Loudon v. King, 22 Mo. 336; State v. Wall, 15 Mo. 208; Coquard v. Pendergrast, 47 Mo. App. 243-254; Ins. Co. v. Hill, 12 Mo. 148. The court properly sustained the demurrer to plaintiff's evidence. It failed of establishing any right of recovery. The action is one for damages for alleged injury to plaintiff's lands resulting from the maintenance of an alleged nuisance by the defendant. The alleged nuisance is the storing of coal oil and gasoline in tanks on defendant's adjacent premises, which it is alleged expose plaintiff's building to the danger of the loss by fire. There was no evidence of any careless or otherwise dangerous handling or use of fire by the defendant, or by anybody, on or near the premises; nor evidence of any want of care in the construction or operation of the plant whereby the hazard of fire became imminent or in anywise probable. In the absence of such evidence plaintiff was not entitled to recover and the court properly awarded the peremptory instructions. Judge

Cooley in his work on Torts, after quoting Blackstone's definition of nuisance as "Being anything done to the hurt or annoyance of the lands, tenements or hereditaments of another," says, "As the definition assumes the existence of wrong, those things which may be annoying and damaging, but for which no one is at fault, are not to be deemed nuisances, though all the ordinary consequences of nuisances may flow from them." Cooley on Torts [2 Ed.], 671. It is held that a railroad company may lawfully locate its road and run its locomotives and cars within close approach to adjacent buildings and that the escape of sparks and a consequent loss of property by fire in the absence of proof of misuse or want of care, is *damnum absque injuria*. And this is the well recognized doctrine in our own State before the act of 1887, making the liability absolute. Fitch v. Railroad, 45 Mo. 322; Kenney v. Railroad, 70 Mo. 243; Palmer v. Railroad, 76 Mo. 217; Otis v. Railroad, 112 Mo. 622; Mathews v. Railroad, 121 Mo. loc. cit. 317. The absolute liability by the old common law for setting out fire on one's own premises whereby the premises of an adjoining proprietor is destroyed, has never obtained in this State. That rule or custom was abrogated by statute 6, Anne, chapter 31, and so was transplanted into this country as part of the common law. Accordingly in all actions for damages by fire our courts have limited the right of recovery to proof of actual neglect or want of ordinary care. Miller v. Martin, 16 Mo. 508; Catron v. Nichols, 81 Mo. 80.

BOND, J.—This suit is for damages for the maintenance by defendant of one gasoline tank, and six coal oil tanks on its grounds adjacent to the dwelling house of plaintiffs, which are alleged to contain gasoline and coal oil and to be liable to ignition from the sparks of the engines of two railroads, whose tracks abut the grounds whereon defendant has placed such structures, thereby endangering plaintiff's

property, decreasing its rental and salable value, and affecting them with apprehension of injury to themselves and their property. The answer admitted the corporate capacity of defendant, denied the other allegations of the petition. There was a trial, at the end of which the court sustained a demurrer to the evidence. Plaintiffs took a nonsuit with leave and appealed from the ruling of the court to set it aside.

The correctness of that ruling is the only matter for review. Plaintiffs' evidence tends to prove that they owned a dwelling house situated on an adjoining lot to defendant's premises, and about seventy-five feet distant from a gasoline tank, which was erected by defendant in 1893, at which time it also erected the other tanks referred to. Previous to that date certain tanks of defendant situated in the same neighborhood had been destroyed by fire. The evidence further showed that in 1893, plaintiffs rented their dwelling house and moved to their farm three or four miles distant, where they have since resided. Mrs. Cinderella Harper, one of the plaintiffs, testified as follows:

"At the time of the burning of the Standard Oil Works, was living in the property described in the petition in this cause. My husband, myself and son, 13 years old, composed the family. At the time we purchased the property, we paid $1,100 for it. We have since changed the house on the inside and built an addition to it, making it worth something near $1,400. We moved there in August, 1893, and the fire occurred that fall. There is a great deal of difference in the location of the tanks from what they were before the fire. I would take the distance of the nearest tank to my house to be about 75 feet; that is the gasoline tank. You could smell it very plain when passing, when it was leaking. It was leaking on the side next to my house. There was nothing there to catch the dripping. It just dripped on the ground. The effect of the proximity of these works to our residence was that we wanted to get away as quick as possi-

ble; we were afraid it would catch fire again and destroy the property and may be our lives; our 13 year old boy was perfectly wild about it; he was afraid he would get burned up, and we moved on a farm in Ralls county. We moved out because we did not want to live there so close to those tanks. I am acquainted with the market value and rental value of property in Oakwood. The difference in the market value of that property in its present condition, in close proximity to the Standard Oil Works, and if they were entirely away, would be two thirds. I mean it is only worth one third of what it would be if that property were away from there. The difference in the rental value would be one half. The property is rented to an employee of defendant for $7 per month. With the defendant's works away from there, it would rent for $12 per month. We had no other applicant."

The tanks in question were used for the storage of gasoline and coal oil. While their contents are inflamable    they are not spontaneously combustible, and can only be ignited by extrinsic agencies. No complaint is made in the petition of the omission of noisome or unwholesome smells. The only elements of danger claimed are those attributed to danger from fire. On this point the evidence is that prior to the erection of the present tanks in 1893, others in the same neighborhood had been destroyed by fire, and that two lines of railroad pass within fifty and one hundred feet of the tanks, over which cars are constantly running. It is not believed any well considered case holds that the storage of gasoline and coal oil in suitable tanks constitutes a nuisance *per se*. Things which are not in themselves nuisances can only become such by some neglect in the manner or locality of their use, hence if there is any evidence in this record tending to prove negligence on the part of defendant in the storage of said substances, i. e., in the construction or location of its reservoirs whereby plaintiff's property was damaged, a cause of action in their favor would at once arise. In considering this subject the evidence need only be discussed so far as it

relates to the probability of the destruction of the property of plaintiffs by fire communicated from the tanks of the defendant, that being the only ground of complaint alleged in the petition. All that appears on this subject in the record is the propinquity of the tanks to plaintiff's property, a distance of about seventy-five feet, and to the main tracks of the two railroads, a distance of fifty and one hundred feet, respectively. There is no evidence whatever that the tanks are not so constructed as to prevent ignition from flying sparks or embers from passing locomotives, or that they are not guarded from such dangers by competent watchmen. Conceding for the argument that if the tanks were improperly exposed they would be likely to take fire from passing engines, the difficulty remains that there is no substantial evidence in the record showing that they were left in that condition. It follows, under this state of the proof, that there was no reasonable ground of apprehension of destruction of plaintiffs' property by fire communicated from passing trains, and this being so it is further apparent that defendant was not guilty of negligence by the mere act of locating its nearest tank seventy-five feet from plaintiffs' dwelling. It had the absolute right to the reasonable use of its own property. Berlin v. Thompson, 61 Mo. App. loc. cit. 241. There is no evidence in this record showing that in constructing the tanks complained of it did anything calculated to excite just apprehension of fire in the minds of persons of normal nervous sensibility. Powell v. Furniture Co., Book 12, L. R. A., p. 53. Neither does the mere fact that injury to the rental value of plaintiffs' property ensued render defendant liable, in the absence of any showing of negligence, which, as has been seen, was indispensable to entitle plaintiffs to recover under the facts in this record. Gibson v. Donk, 7 Mo. App. 37.

Finding no reversible error in the ruling of the circuit court sustaining the demurrer to the evidence, its judgment is affirmed. All concur.